Mr. Walsh, when you're prepared, you may proceed. Good morning, Your Honors. May it please the Court, I'm Tom Walsh for CMI, the appellant in this case. Counsel, could you get the mic a little closer? I couldn't hear you very well. All right. In this case, the Appley Platinum Mortgage Company sold some 749 loans to our client, CMI, over the course of several years, valued at $140 million. This was done pursuant to a contract, which is fairly standard in the industry, which, among other things, obligated Platinum to repurchase and first secure, if they could, and if not, to repurchase any loans deemed by CMI in its absolute discretion to be defective or improperly written. Among the defects that would authorize CMI to reject such a loan and demand to secure a repurchase were a violation of underwriting requirements in the CMI manual, which is incorporated into the contract by reference, and secondly, and absolutely, if CMI's investor, which was our client, required CMI to repurchase, then Platinum had an automatic obligation to repurchase from CMI. Out of these 749 loans, this case involves seven of them, all of them rejected by Fannie or Freddie, and all deemed by Fannie, Freddie, and CMI to have violated the underwriting requirements of CMI, and also they contain misrepresentations by the borrower of such things as his income, his existing debts, the appraisal on the subject mortgage property, what have you. In this case, and in all these cases which have stirred a hornet's nest of litigation as these correspondents repeatedly refuse to acknowledge their responsibility under this kind of a contract, CMI would send three notice letters to the Platinum upon finding out about a defect. The first is called citing notification letter, which said that Fannie Mae or Freddie Mac had rejected one of these loans for specified reasons, and here are the reasons, and that notice gave Platinum 30 days to come in to contest the rejection and or propose a satisfactory resolution, failing which they would be required to repurchase the loan. Counsel, are the triggers under section 11, just to get to the agreement itself, the triggers under section 11 and the addendum the same? And what I mean by that is section 11 contains a list of five different reasons that could it just says in conformity with the applicable underwriting criteria of CMI, are those the same things? Is it referring back to those five things or are there different triggers? In this case, they were the same because the misstatements by the borrower violated the underwriting requirements of CMI, so this thing about triggers and splicing and dicing those two provisions to me is meaningless because all of these loans were deficient under both the original section 11 and the DU addendum, and I don't think it makes any difference which one. Will that always be the case though? I mean you said in this particular case they overlapped, and that's fine, I accept that, but is there anything that's included as a trigger in the addendum and not the original section 11 or vice versa? I wouldn't think so. The addendum applies only of course if Platinum or its correspondent was the underwriter, and in this case they underwrote the loan, so that applies in addition to section 11, and as far as when there's a misrepresentation and a rejection by Fannie or Freddie, that automatically triggers both section 11 and the DU addendum, and the notices in our view complied with both of those sections. But you could have a situation, I think under section 11, where you could have a trigger that would be curable. You could. Because the addendum is almost always going to be non-curable, because there you're violating the underwriting requirements, but if, although I suppose you could even say even that could be cured, if the underwriting requirements were that you had to have five pay stubs and they only had four, so they go and get the fifth one, it's totally consistent with the other four, that's a curable violation, right? That's possible, yes. But of course that's not what we're dealing with here. These violations were non-curable. They tried, they took the position that by coming in and explaining in great detail in some cases why they didn't think these loans were defective, that they had cured. Their own pleading in the case says that because they were not defective, they therefore had established a cure, and that's at appendix 858 to 874. But Fannie and Freddie said, no dice. We still consider these loans to be defective, and therefore there wasn't anything that could happen at that point to cure it. So at that point, CMI sent its initial repurchase requirement. Having failed to cure, it's now time to buy. Going back to what you said earlier, though, you said, I think, if I understand you correctly, that in the initial letter, which you referred to as the citing notification letter, that they had 30 days to respond. Yes. Isn't that part of the issue? It doesn't say 30 days in there? No, it does say 30 days. Yes. All three of the letters went out, had a 30-day requirement in them, as did the DU addendum. So once Fannie and Freddie said that... Before you leave that, on the addendum, you know, words have meaning, obviously, and the Section 11 uses the phrase, what is it, correct or cure? Yes. And then the addendum uses the phrase, essentially, and I'm looking for, written evidence as to why a correspondent believes such underwriting criteria was not violated. Doesn't say anything about curing or correcting. If this 30 days was meant to apply to Section 11, and maybe we can infer it, why use different language? That's what I'm struggling with. Why use different language? Why not say, for example, in the addendum, or provide CMI with written evidence of correcting or curing the error that platinum violated, instead of sort of leaving it ambiguous? I think because, by definition, if there's an underwriting violation, it can't be cured. I mean, they have violated the principles in making the original loan four or five years ago, perhaps, and platinum isn't in any position to cure that. The only cure could come from the debtor who's now long gone. I think that's why the addendum doesn't talk about cure, but it does say, come in and tell us if we're wrong, which, in effect, is the only cure that's possible. So once that fails, then it's time to fess up and buy the loan back. Well, then that brings up the question, why use the phrase, correct or cure, in Section 11, then? Well, that's basically what's going on. I mean, here's this loan. Fix it. You can use that language. You can say, correct or cure it. You say, come in and propose a satisfactory resolution, is what they say. All that, basically, is synonymous stuff. And the judge, in this case, got off track, I think, by construing this notice to cure as a condition preceding. She didn't hold it's a condition preceding. She just assumed it, and then said it's got to be strictly complied with. Well, the law is pretty clear in Missouri and elsewhere that, first of all, Missouri does not favor conditions preceding. And secondly, there's no conditional language of any type in here. And generally, the law is that, in this kind of a case, substantial compliance is adequate. And what you have here is substantial compliance. And then someone said, here's the problem. Fix it. In other words, cure it. And when you can't, then what's the point in giving a second notice to cure? And there's no showing anywhere in the briefs or anywhere else what Platinum thinks it could have done to cure if it had gotten this notice that it claims should have been more detailed and specific. It had a clear understanding of its position. These are professionals. They do this for a living. They're sophisticated lenders. And they knew that if this goes south, if it goes sour, and Fannie and Freddie don't buy these loans, then we're going to have to buy them back. So they search around for some excuse not to. And here we are, years later and many dollars later, and they still are slicing and dicing these provisions, trying to figure out some way to avoid what is an obvious obligation in which they had obvious knowledge of. The Missouri case of Selner and Selner-Glaser that we cite on page 29 of our brief, I think, sums it up well. It says notice provisions will not be strictly construed when there's no prejudice to the party who's supposed to receive the notice and there's no damage. And that's the case here. If they'd gotten another notice to cure, what would they have done? They'd have the same situation we do now. They would have come up with some other reason not to pay, I guess. But strict compliance is not required. This is not a condition preceding. The New York case we cite in our reply brief of national gear says it pretty well, that notice provisions of this type should not be construed pedantically. Nice word. And I think that's correct. Should not be construed so as to strip the contract of its meaning. Question is, did the parties understand what was going on? Did the contractual terms get recognized and implemented? Was platinum prejudiced by a slight variation in the language of the contract versus the language of the letter? The answer to that is clearly no. And so this is frankly much ado about nothing. Counsel, I just want to ask you this, which is I think I understand completely city mortgages view, but I think from the other point of view, if you read those letters, they talk about the written evidence that, you know, you can submit the written evidence within 30 days, which is part of the addendum, but doesn't talk about the opportunity to correct or cure it. Now, city mortgage may say, well, you couldn't have corrected or cured that. But the way I read those letters, and maybe I'm reading them wrong, is maybe city mortgage didn't want to give them a chance to correct or cure. Maybe they assumed that they couldn't correct or cure. But why not mention that in the letters as well, that you could correct or cure? It makes it seem like they're almost hiding that fact. Well, they're basically saying the only way you can correct or cure here is to show us that we're wrong or to propose a satisfactory explanation. I mean, to me, that's synonymous. And there is clearly, there's no question about the fact that they knew what they had to do. They tried to do it. They took the position, excuse me, that we cured by pointing out that there's not really a defect. Well, and CMI, incidentally, was helping them with Fannie and Freddie, trying to get Fannie and Freddie to agree that, in fact, there was no defect. But Fannie and Freddie stood firm, said to CMI, you've got to buy this back, and that Platinum's duty to buy it back from us. Thank you. Thank you, Mr. Walsh. Mr. Jenkins. Thank you, Your Honors. My name is Jonathan Jenkins for Platinum Home Mortgage Corporation. May it please the Court. This is a basic contract action about CMI, a too-big-to-fail financial institution that thought it had so much contractual discretion over its correspondent lenders that it apparently believed it no longer had to follow a few basic ground rules, which CMI itself wrote, governing the steps that CMI must actually take to exercise that contractual discretion. Now, Platinum and CMI agree on a number of first principles, such as the rules of contractual interpretation that apply to Section 11 as amended by the DU addendum. First, we should interpret contractual intent entirely from the contract's terms. That's the holding of City Mortgage, Inc. v. Chicago Bancorp, the last Eighth Circuit pronouncement on CMI's repurchase demands, which states, when a contract is unambiguous, intent is discerned solely from the contract's language. Likewise, CMI's reply brief at page 2 and 3 cites State XRL Riverside Pipeline, which says, a contract must be construed as a whole so as not to render any terms meaningless. A construction that gives a reasonable meaning to each phrase and clause and harmonizes all construction that leaves some of the provisions without function or sense. Well, the quotation is to Dunn Industries, which is Platinum's case for that exact same proposition. Now, the problem comes in the application. Platinum contends that its interpretation and Judge Hamilton's order below use disinterpretive maxim to harmonize amended Section 11 and give all provisions meaning and eliminate extraneous terminology. So what's the deficiency in the notice? The deficiency in all of the notices is the failure to prescribe the time prescribed by CMI to correct or cure a loan. Now, we also went one step further below and said that the notices were misleading under Gray v. Bricknell because, one, they omitted or they purported to recite the pertinent portions of correction or cure. And it's undisputed that none of the letters ever. You were put on notice that there was nonconforming performance in order for them to perform under their obligations. And wouldn't it be not unreasonable to assume that your obligation to cure would begin immediately? And extend for at least some reasonable period of time? Well, that's a new argument, Your Honor. I've not heard that before. And second, the contractual language is clear that CMI must prescribe the time and that time, by definition, must expire before any repurchase obligation can kick in. And so from the standpoint of platinum, the letters come, the letters go. It looks to them, all right, they get the initial repurchase letter. It doesn't say anything about cure. It says that repurchase is now required and you have 30 days to confirm repurchase. Now, according to CMI, CMI views that IR letter not as a repurchase demand. In fact, in a footnote, we mentioned there were two loans, Merido and Delgadillo, where CMI issued an initial repurchase letter, but not a final repurchase letter. And even though the initial repurchase letter said repurchase is required, CMI subsequently took the position that it had never actually demanded repurchase. So from a repurchase demand, CMI is supposed to infer that that is not actually a repurchase demand, but a cure notice. And we also know that this was not the situation that was followed in all cases for all correspondents. We used the example of the initial and final repurchase letters to Colorado Savings Bank, which very clearly said cure or repurchase is required by, it was August some date, I believe it was 2009. So CMI clearly knows and understands how to give a valid cure notice and how to properly prescribe time. But you have to read, I think another principle you have to follow is you got to read all three letters together. There's no requirement that anything be in one particular letter, or there's actually no requirement of any specific or particular language even. But what's wrong with the argument that on the initial letter, you're told that Freddie and Fannie are going to require us to repurchase. That's something you can't cure. But what you can do is you can work with us to try to convince them that they're wrong. Don't repurchase. And these are the problems that Freddie and Fannie have identified. Let's work together to see if we can solve those problems and convince them not to force us to repurchase because then there isn't anything anybody else can do about it. What's wrong with saying that that gave you all the rights to which you're entitled? Well, the citing notification letter, CMI actually conceded below that it was insufficient to trigger any obligation by Platinum. It gives notice of a potential breach. But then you look at the second letter. That's why I say you got to look at all three letters. Right. And the first letter, it does not, at that point in time, CMI has not made an actual determination of breach, excuse me, not of breach, but of defect, which is required. They have to exercise a contractual discretion to determine that there is a defect before they can demand that Platinum correct or cure. Now, as of the citing notification letter, CMI had not done that. And in fact, in at least five of the cases in these seven loans, they were still fighting with Fannie and Freddie over whether or not there was an actual defect. And although the response was voluntary, we did provide some assistance. But I mean, isn't it clear in part of that first letter that Fannie and Freddie are going to require us to repurchase these loans, which means then we're going to sell them back to you, unless between the two of us, we can convince Fannie and Freddie they're wrong. So let's work together. I mean, you knew that. That was what the letters implicitly said, weren't they? So let me back up a stack and address the notion that once CMI repurchases a loan from Fannie or Freddie, the defect becomes incurable, because I don't believe that to be the case. Section 11, subsection 4 actually says if CMI determines that a loan must be repurchased from any secondary market investor, including but not limited to Fannie, Mae, Freddie, Mac, dot, dot, dot, due to a breach by correspondent of any representation, warranty, or covenant contained in this agreement, or the CMI manual, or a failure by correspondent to comply in all material respects with the applicable CMI manual terms, dot, dot, dot. So subsection 4 is twofold. One, for it to apply, CMI must have been actually obligated to repurchase the loan from Fannie Mae. And in several instances, we argued below, and it's in the record on appeal, that CMI repurchased the loans voluntarily and had no actual obligation to do so. And one of them, the Vitali loan, is actually a notation on the repurchase authorization that we disagree with Fannie Mae's determination that 2007 tax returns are required, because they were not available at the time of origination. Another example might be where the loan, or the second example, due to a breach by correspondent, Fannie Mae might be required to repurchase a loan due to something that turned out not to be a breach by the correspondent. It was perhaps a breach of one of Fannie Mae, or excuse me, CMI's own contractual obligations or warranties made to Fannie Mae, and the correspondent had nothing to do with it. Council, what if, I think opposing council says, well, what if there's no way to cure it? What if there's no way to correct or cure it? CMI knows that, City Mortgage knows that, so they say, well, let's not even provide the notice. We don't need to provide the notice, because you can't cure it. This kind of breach just can't be cured. You've violated our underwriting criteria. You cannot cure that. What's your response to that? Did they need to send you a notice that says, please correct or cure, even though there's no way to cure it? The contract says they do, Your Honor, and I would submit that, yes, we interpret contracts according to their terms. The contract does not designate any of the section 11 defects, original section 11 defects, 1 through 5, as incurable. Not all of them, by the way, involve underwriting-related issues, as noted in page 32 of our brief. Subsections 3 and 5 are unrelated to underwriting at all. So the notion that CMI has such substantial sole discretion that they can just decide that a defect is not curable and forego the cure period to which we are contractually entitled just doesn't follow from Platinum's view of the contract. You know, particularly, and I want to point out that to a significant extent we are in Rule 59 ELAN because we're talking about arguments and issues that were not on the record at the time the court granted summary judgment, and the condition precedent to prescribe time, or should I say CMI's contractual obligation to prescribe time, was deemed a condition precedent. That was an argument that CMI did not oppose below. And in fact, on their Rule 59E motion, they sought to exploit the condition finding by arguing that Platinum had not adequately pled condition precedent in its answer, among other places. So we would contend that it is a condition precedent, and condition precedents, as we note in our brief, cannot be substantially performed, and prejudice is not a requirement. So even if a loan were incurable, if it's a condition precedent, you still have to comply with it. And I would argue that from the plain contractual language, even if it isn't a condition precedent, it is, as we also argue in our brief, at the very least, an essential element of the repurchase cause of action, because the claim doesn't even accrue until the contractually mandated cure period expires without the defect having been cured. So the notion that there is some class of defects out there that are uncurable is not contained anywhere in the language of Section 11, and simply not a valid interpretation of either Section 11 or the DU addendum. Thank you, Mr. Jenkins. Thank you. Mr. Walsh. The Section 4 of Section 11 that he referred to requiring repurchase from Fannie Mae by CMI, the preface to that is that if CMI in its sole and exclusive discretion determines that such a repurchase must be made, that triggers Section 4. Again, CMI's discretion is recognized by this Chicago Bank Corp as unfettered. The National Gear case we cite in our reply brief is particularly relevant here. There was a cure provision, a notice for a cure provision, but they didn't give any notice at all. They just terminated the contract. And the court said, that's where they said, we're not going to construe it pedantically, but to look and see whether there was any real prejudice, and there wasn't any prejudice, so the failure of notice was, so what? The Gray against Bicknell case is also relevant, because there they held that where the correction and cure language appears in the contract, it doesn't have to reappear in the contract. When they get the notice provision specifying 30 days, they know that that means that the cure provision is being implemented, whether those words are used or not. But it's clear here that they construed that first letter to mean, as you said, Judge Malloy, let's get together and try to persuade Fannie and Freddie that this isn't a problem. Failing that, we're going to own this loan. Can I ask just one real quick question? In the initial citing letter, you make reference to whether we should file an appeal. Is there an appeal? If Fannie or Freddie comes to CMI and says, repurchase this loan for this, that, or the other defect, is there an appeal procedure that you can implement with Fannie and Freddie to... Not formally. I think that's in the DU addendum. But wherever it is, there is some reference to an appeal. And to me, that means, come on, let's go talk to them and see if we can talk them out of their position. Thank you. Thank you, Mr. Walsh. Thank you also, Mr. Jenkins. Court appreciates your presence and the argument that you've provided to the court this morning. We'll take the case under advisement and render decision in due course. Thank you. Madam Clerk, does that conclude our business for the morning? Yes, it does, Your Honor. That being the case, we'll...